UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

EDWARD KOEHL,

                          Plaintiff,

          - vs -                                9:05-CV-0582
                                                             (DNH)(DEP)

GARY GREENE, Superintendent; JAY KELLMAN,
Facility Rabbi; BRUCE PARKER, Correction Officer;
C. LACROIX, Correction Sergeant; R.W. POTTER,
Deputy Superintendent; GREG LYONS, Cook, and
JAMES PAGANO,

                          Defendants.

---

APPEARANCES:                                        OF COUNSEL:

EDWARD KOEHL
Plaintiff, *pro se*

HON. ELIOT SPITZER                           RISA L. VIGLUCCI, ESQ.
Attorney General of the                         Asst. Attorney General
  State of New York
Attorney for Defendants
Department of Law
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## DECISION & ORDER

**I. BACKGROUND**

      Plaintiff Edward Koehl ("Koehl"), has filed a Motion for a Preliminary Injunction. Dkt. No. 18. Defendants filed a Memorandum in opposition. Dkt. No. 25. Plaintiff thereafter filed two Replies. Dkt. Nos. 28, 31.

In the complaint, plaintiff alleges that beginning in April 2003, while confined at Great Meadow Correctional Facility, he was denied his constitutional rights to attend Jewish services, obtain kosher meals, and practice his chosen religion. *See e.g.,* Dkt. No. 1, Complaint at ¶¶1, 56.

In support of this motion, Koehl alleges that in order to obtain kosher meals, he must sign a document titled "Cold Alternative Diet/Attendance Agreement" ("Diet Agreement"). Dkt. No.18, Motion at ¶3; Dkt. No. 31, Reply at Ex.1. He claims that the Diet Agreement is a one-sided contract that requires him to sign for every kosher meal, which he claims makes him attest to his religious faith. Dkt. No.18, Motion at ¶3. He claims that failure to sign for his meal or attend meals may result in being issued a misbehavior report and denial of a kosher diet. *Id.* He argues that this policy discriminates against Jewish inmates and is used to deter those desiring a kosher diet. *Id.* at ¶4. He also alleges that in the mess hall, he is forced to sit at the same table with inmates who eat non-kosher food, mix meat and dairy, and eat pork products. *Id.* at ¶¶5-6. Plaintiff claims that at times he is "forced to come in contact" with these non-kosher items. *Id.* at ¶6. He further alleges that the manner in which the tables are cleaned makes them "unacceptable to the touch and for kosher food consumption." *Id.* at ¶6.

Koehl requests that defendants stop enforcing the Diet Agreement, so that he is not required to sign for every kosher meal. Dkt. No. 18, Motion at p.5; Dkt. No. 31, Reply at p.13. He also claims that his sealed kosher food has been opened or tampered with, thus he requests that these practices stop. Dkt. No. 18, Motion at p.5. Lastly, he requests either that his kosher meals are delivered to him in his housing area or that he is granted permission to pick up his three daily meals during breakfast. *Id.*; Dkt. No. 31, Reply at p.13.

Defendants argue that the First Amendment only requires that the meal provided is consistent with the inmate's religious dietary needs. Dkt. No. 25, Memorandum at p.4. Defendants claim that plaintiff is not entitled to a preliminary injunction because he is being provided with kosher meals. *Id.* at p.5.

## II. MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary remedy that should not be granted as a routine matter. *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). In most cases, the party seeking the injunction must show: (a) a threat of irreparable injury if the injunction is not granted; and (b) either that (1) a probability of success on the merits, or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party. *Burgess v. Friedmann*, No. 9:05-CV-0379, 2005 WL 3531459, at *2 (N.D.N.Y. Dec. 22, 2005) (citing *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996)). However where a movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief sought, the injunction sought is properly characterized as mandatory rather than prohibitory. *Burgess*, 2005 WL 3531459, at *2. A party seeking a mandatory injunction must make a "clear" or "substantial" showing of the likelihood of success, as well as irreparable harm, should the injunction not be granted. *Id.* (citing *Jolly*, 76 F.3d at 473-74). Accordingly, the instant motion is treated as seeking mandatory relief rather than prohibitory relief because Koehl seeks relief which will alter the status quo or which will provide him with substantially all the relief sought; therefore he must make a clear or substantial showing of the likelihood of success.

A. **Irreparable Injury**

As to this first factor, where an alleged deprivation of constitutional rights is involved, courts generally do not require a further showing of irreparable harm by the party seeking injunctive relief. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984); *see Kahane v. Carlson*, 527 F.2d 492, 496 (2d Cir. 1975) (holding that inmate must be provided with a diet sufficient to sustain him in good health without violating Jewish dietary laws). The Second Circuit has suggested that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir. 1991) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). In this case, Koehl alleges that his right to religious freedom is being violated due to defendants' discriminatory policies and food-serving practices. Accordingly, for purposes of this motion, it will assumed that plaintiff may suffer irreparable harm if the requested relief is not granted.

B. **Likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the plaintiff**

Despite the fact that one has established irreparable harm, a party is not entitled to injunctive relief unless there is also proof of a probability of success on the merits or sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party. *See Burgess*, 2005 WL 3531459, at *2.

1. **Requirement that plaintiff sign for each meal**

Plaintiff admits that he has been receiving the Cold Alternative Diet, which is provided to inmates who require a kosher diet. He objects, however, to having to sign for every meal, which he

4

claims makes him attest to his religious faith. He requests that defendants stop making him sign for every meal.

While an individual does not surrender constitutional protections when he passes through the prison gate, prison officials must be given substantial deference in the administration of their institutions. *See Turner v. Safley*, 482 U.S. 78, 84 (1987) "[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations . . . . The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979) (citations omitted).

Under the First Amendment, prison regulations imposing burdens on an inmate's free exercise of religion need only be reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404-05 (1987); *Abdul-Malik v. Goord*, No. 96 CIV. 1021, 1997 WL 83402, at *7 (S.D.N.Y. Feb. 27, 1997). The first step in establishing a free exercise claim under the First Amendment is that "the inmate must first demonstrate that the state action substantially burdened his or her exercise of religion." *See Ford v. McGinnis*, 352 F.3d 582, 591-92 (2d Cir. 2003) (applying the "substantial burden" test, but declining to explicitly decide whether it applies to free exercise claims); *Muhammad v. Warithu-Deen Umar*, 98 F. Supp. 2d 337, 343 (W.D.N.Y. Apr. 18, 2000) (for a free exercise claim, inmate must show that state action substantially burdened the exercise of religion) (*citing Boomer v. Irvin*, 963 F. Supp. 227, 231 (W.D.N.Y. 1997); *Abdul-Malik*, 1997 WL 83402, at *7); *see also Orafan v. Goord*, Nos. 95-CV-318, 00-CV-2022, 2006 WL 149050, at *6 (N.D.N.Y. Jan. 17, 2006) (to succeed on First Amendment free exercise claim,

plaintiff must first show that a state practice or policy substantially burdens plaintiff's religious exercise).  As stated by the Supreme Court:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.

*Muhammad*, 98 F. Supp. 2d at 343 (*quoting Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 717- 18, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)) (other citations omitted).  "If the plaintiff establishes that the state has substantially burdened the exercise of his of her religion, then the state must justify its actions by showing that its regulations, policies or practices are 'reasonably related to legitimate penological interests.'"  *Muhammad*, 98 F. Supp. 2d at 343 (*citing Turner*, 482 U.S. at 89; *O'Lone*, 482 U.S. at 353; *see also Salahuddin v. Coughlin*, 993 F.2d 306, 308-09 (2d Cir.1993); *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990); *Withrow v. Bartlett*, 15 F. Supp. 2d 292 (W.D.N.Y.1998)).  "A substantial burden is more than a mere inconvenience, but rather involves, for example, a situation where an adherent is forced to modify his behavior and violate his beliefs."  *Wagoon v. Gatson*, Nos. 00 CIV 3722 AGS, 99 CIV 5872 AGS, 2001 WL 709276, at *7 (S.D.N.Y. Jun. 25, 2001) (*quoting Gill v. DeFrank*, No. 98 Civ. 7851, 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000), *aff'd* 2001 WL 388057 (2d Cir. 2001) (unpublished disposition)) (other citations omitted).

Koehl has failed to demonstrate, for purposes of this motion, that he is likely to be successful in proving, on the merits of the action, that the facility's sign-in requirement substantially burdens his right to freely exercise his faith.  "All that is required for a prison diet not to burden an inmate's free exercise of religion is 'the provision of a diet sufficient to sustain the prisoner in good health without

6

violating [his religion's] dietary laws.'" *Cox v. Kralik,* No. 05 Civ. 5917, 2006 WL 42122, at *1 (S.D.N.Y. Jan. 6, 2006) (*quoting Kahane*, 527 F.2d at 496). Plaintiff does not deny receiving kosher meals. He does vaguely allege that the meals he receives, although designated kosher, are not truly kosher because: (1) they are not prepared according to kosher standards; (2) they are tampered with after preparation; or (3) he must consume the meals under non-kosher conditions (*i.e.* tables are unsanitary, non-kosher food is present). However, he provides no evidence whatsoever to support these claims. Also, he has not alleged that the diet he receives is not adequately nutritious.

Therefore, plaintiff has failed to prove that the policy of having to sign for kosher meals substantially burdens his right to free exercise of his religion. At best, the requirement is an inconvenience to him. He is not prevented from practicing his religion and is not required to engage in behavior that violates his religious beliefs. While plaintiff argues that, by signing for every meal, he is required to attest to his faith, this does not restrict his religious freedom, but instead grants him permission to freely exercise his faith by receiving kosher meals.

By analogy, the following cases also support a finding that, for purposes of this motion, plaintiff has not demonstrated that he will be successful in showing that the meal sign-in policy substantially burdens his right to freely exercise his religion. For instance, the Second Circuit held that a prison facility's requirement that an inmate register his religious affiliation before being allowed the privileges accompanying the exercise of that religion "places, at most, a slight burden on an inmate's right to religious freedom while serving as an important and beneficial 'bright line' that enables prison officials to ascertain the seriousness of the inmate's religious commitment and respond accordingly." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096-97 (2d Cir. 1997) (finding that inmate had no standing, in part, because any injury suffered resulted from the inmate's own decision

not to follow "the simple procedure of filling out [a] one-page form" to register as member of specific religious sect).

With regard to the free exercise of religion and the provision of meals, courts should "refrain from micromanaging the Department of Correction's menu planning," as it is well-settled that "courts are ill-equipped to substitute their judgments on matters of prison administration for those of prison authorities." *Abdul-Malik*, 1997 WL 83402, at *9 (holding that court will not require Department of Corrections to provide Muslim inmates with Halal, or religiously lawful, meat three to five times per week) (citing *Kahane*, 527 F.2d at 496; *Jolly*, 76 F.3d at 476). Further, it has been held that requiring a prisoner to complete a standard prison form in order to obtain kosher meals did not violate his right to freely exercise his religion. *Resnick v. Adams*, 348 F.3d 763, 771 (9th Cir. 2003) (noting that to accommodate the plaintiff's request for a kosher diet without having to file the standard application would frustrate the orderly administration of Common Fare Program and of the prison, and that it appeared that the prison acted to advance, not infringe, the free exercise rights of inmates by providing a procedure by which religious believers can request and receive special diets); *see also Davidson v. Murray*, No. 92-CV-0283C, 2005 WL 1123756, at * 4 (W.D.N.Y. May 10, 2005) (finding it "beyond dispute" that policy which required arriving inmates who requested kosher meals to obtain verification of meal program eligibility from facility's chaplain had a "valid, rational connection" to the orderly administration of program) (citing *Turner*, 482 U.S. at 89; *Resnick*, 348 F.3d at 768-71).

Since plaintiff has not established for purposes of this motion that the state has placed a substantial burden on the exercise of his religion by requiring him to sign for every meal, it need not be determined at this time whether the sign-in policy serves a valid penological interest. It is noted

that defendants' attorney failed to address this issue in response to plaintiff's motion. This failure was serious and might have resulted in the granting of the preliminary injunction.

### 2. Request that plaintiff's food not be tampered with

Regarding plaintiff's request that his sealed kosher food is no longer opened, or tampered with, he has provided no evidence, such as documentation or affidavits from witnesses or other inmates, to support his claim that his food is being tampered with. Moreover, he does not specify who allegedly opened or tampered with his food, or when these acts allegedly occurred.

### 3. Request to receive meals outside of the mess hall

As to plaintiff's request for either the delivery of kosher meals to him in his housing area or permission to pick up his three daily meals during breakfast, it has been held that a mandatory attendance policy, requiring Alternative Diet inmates to attend all meals in the mess hall, was reasonably related to a facility's legitimate penological interest in managing its Nutritional Services budget. *Davidson*, 2005 WL 1123756, at * 3 (citing *Davidson v. Zon*, No. 94-CV-0184 (W.D.N.Y. Sept. 10, 2002)).

### D. Conclusion

The plaintiff has failed to make a clear or substantial showing of the likelihood of success on the merits, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward him.

Therefore, it is

ORDERED, that plaintiff's Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: February 1, 2006
Utica, New York.